IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO.: 07-289(RMC) |
| v. | : **FILED** |
| DARREN JENKINS, | : JUN 17 2008 |
| Defendant. | : NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

## STATEMENT OF OFFENSE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this statement of facts which the United States would have presented if this matter had gone to trial. The facts presented below show, beyond a reasonable doubt, that between on or about October, 2002 through on or about October, 2007, defendant Darren Jenkins (hereinafter, "JENKINS" or "defendant") committed the offense of Making Extortionate Extensions of Credit, in violation of 18 U.S.C. § 892.

### Conduct Related to Deidra Norman

In or about 1994, JENKINS met Deidra Norman, a D.C. public school teacher, and they became friends. Between 1995 and 1999, JENKINS loaned Norman money on two separate occasions. During that period, Norman often had difficulty making payments on the loans, and her payments would increase due to the interest and penalties that JENKINS charged. On occasion, when Norman was late with a payment, or paid less than was expected, JENKINS threatened her with bodily harm to pressure her into making payments. JENKINS claimed that he had obtained the money to loan Norman from an unidentified third party, who insisted on receiving payment, and who

would hurt them both if payment was not made. Norman finally paid off these loans in 1999, by making a lump sum payment of $9,000, which was much more than the amount of money she originally borrowed from Jenkins.

In or about October 2002, Norman asked JENKINS about obtaining a new loan, even though she knew that her delay or failure to make payments on the loan could cause the creditor to use violence or other criminal means to harm her. Despite this understanding, Norman obtained a new loan from JENKINS. Between on or about October, 2002 and October, 2007, Norman borrowed money from JENKINS 11 different times, for an approximate total of $6,000. Norman frequently met JENKINS at various locations in the District of Columbia, including the school where she taught and her credit union, to give money to JENKINS to repay the loans.

From the time Norman began borrowing money from JENKINS through October, 2007, JENKINS used threats of bodily injury to Norman to coerce her to pay him more than $40,000, which JENKINS claimed was nothing more than "penalties and interest" on the original $6,000 loan because Norman had repeatedly failed to repay the full loan amount, and had made late or partial payments on the loan. JENKINS would sometimes tell Norman that when she was late on a loan payment, she would accrue penalties and interest at the rate of $5 or $10 per day for the first three days, and then $25 per day thereafter.

For approximately two years, Norman made payments by having her credit union write checks made out to DARREN JENKINS, which she would give to JENKINS on or about her payday. On two occasions, JENKINS told Norman to make out her checks to another individual who collected the checks, totaling $1,400, on his behalf. Norman's banking records from her credit union show that between June 24, 2004 through November 22, 2006, JENKINS and the other person

received 53 checks, in amounts varying from $720 (the smallest) to $1,716 (the greatest), written on Norman's credit union account. Norman's payments to JENKINS and the other person by credit union check totaled $48,891. Norman eventually stopped paying JENKINS with credit union checks, but was still forced to continue making payments in cash. Norman made her last cash payment in the amount of $200, on August 2, 2007, when JENKINS met her at a Wachovia Bank in the District of Columbia. JENKINS repeatedly obtained loan repayments from Norman by knowingly and intentionally threatening her with the use of violence if the payments were not made.

### Conduct Related to Vivian Flowers

Sometime in 2004, the exact date being unknown, JENKINS made an initial loan of $300 or $350 to Vivian Flowers. At the time the loan was made, JENKINS collected Flowers' personal and home addresses, as well as her phone numbers. JENKINS informed Flowers that she would have to pay 10% interest per week for the loan, but no less than a minimum payment of $35 per week. After the first loan, during the next three years, JENKINS made three or four additional loans to Flowers, for a total of approximately $2000. When she accepted the loans, Flowers knew that her delay or failure to make payments on the loans could cause JENKINS to use violence or other criminal means to harm her.

While making the first loan to Flowers, JENKINS had Flowers sign a written agreement in a notebook that he maintained to track the loans he made and the money he was owed on various loans. The agreement between JENKINS and Flowers said: "I Vivian Flowers being of sound mind and body borrow $300 dollars at an interest of 10% percent a week until said debt is paid," and it is signed by Flowers and JENKINS.

JENKINS routinely met Flowers at her job, in the District of Columbia, to collect payments on the loans. When Flowers was late making payments, JENKINS would add penalties and interest to her loans, thus increasing the total amount of money that Flowers owed. On occasion, JENKINS called her to remind her that she needed to make payments because she was an easy target and someone could hurt her if she failed to make her payments.

JENKINS repeatedly obtained loan repayments from Flowers by knowingly and intentionally threatening her with the use of violence if the payments were not made. As a result of her fear, on October 5, 2007, Flowers met JENKINS at her job in the District of Columbia, and she made a payment of $140.

          Respectfully submitted,

          JEFFREY A. TAYLOR
          United States Attorney

By: _____
          FREDERICK W. YETTE
          Assistant United States Attorney
          D.C. Bar No. #385391
          Federal Major Crimes Section
          555 4th Street, N.W., 4th Floor
          Washington, D.C. 20530
          (202) 353-1666
          Frederick.Yette@usdoj.gov

**Defendant's Acceptance of Factual Proffer**

I have read this Factual Proffer in Support of Guilty Plea and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Factual Proffer and all matters relating to it. I fully understand this Factual Proffer and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Factual Proffer fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

_June 17, 2008_  
Date

_Darren Jenkins_  
Darren Jenkins

**Defense Counsel's Acknowledgment**

I am Darren Jenkins' attorney. I have reviewed every part of this Factual Proffer in Support of Guilty Plea with her. It accurately and completely sets forth the Factual Proffer agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

_June 17, 2008_  
Date

_Shawn Moore_  
Shawn Moore, Esq.